1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL HAYNES,                          No.  2:12-cv-3018 KJN P

12                 Plaintiff,

13         v.                                  ORDER

14    D. ROSARIO, et al.,

15                 Defendants.

16

17    I.  Introduction

18         Plaintiff is a state prisoner, proceeding without counsel.  The parties consented to proceed

19    before the undersigned for all purposes.  See 28 U.S.C. § 636(c).  Plaintiff raises Eighth

20    Amendment claims against defendants Rosario and Slupski, and Fourteenth Amendment claims

21    against defendants Peterson and Swarthout.  Defendants' motion for summary judgment is before

22    the court.  As set forth more fully below, the undersigned finds that defendants' motion for

23    summary judgment is denied in part, and granted in part.

24    II.  Plaintiff's Complaint

25         In his verified complaint, plaintiff alleges that while he was incarcerated at California

26    State Prison in Solano, California ("CSP-SOL") on September 12, 2011, defendant Rosario used

27    excessive force on plaintiff, in violation of the Eighth Amendment, by pepper spraying and

28    throwing plaintiff on the ground without provocation during a cell search.  Plaintiff alleges that

                                              1

defendant Slupski was deliberately indifferent to plaintiff's safety, and failed to protect plaintiff, by failing to ensure that the reason for defendant Rosario's September 12, 2011 "raid" on plaintiff was valid, and for failing to review the visiting room videotape before allowing defendant Rosario to "raid" plaintiff's cell on September 12, 2011, all in violation of the Eighth Amendment.  Plaintiff also alleges that defendants Peterson and Swarthout violated plaintiff's due process rights because they were allegedly biased in their decision-making, and refused to consider the visiting videotape from the weekend prior to September 12, 2011.

III.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on the grounds that because plaintiff was found guilty in a disciplinary proceeding of resisting or obstructing defendant Rosario, resulting in the use of force, the excessive force claim against defendant Rosario is barred under Edwards v. Balisok, 520 U.S. 641, 648 (1997).  Defendants contend that plaintiff's Eighth Amendment claim against defendant Slupski fails because no evidence shows that he knew of defendant Rosario's intentions before the alleged use of force, or that defendant Slupski failed to intervene once the alleged unlawful force was used.  Defendants argue that because plaintiff contends defendant Slupski is responsible solely on a theory of respondeat superior, and there is no evidence showing that defendant Slupski participated in the use of force, knew of defendant Rosario's alleged use of excessive force and failed to prevent it, and there is no policy at issue, defendant Slupski is entitled to summary judgment.  (ECF No. 41-1 at 9.)

Defendants contend that plaintiff's due process claims fail because plaintiff was provided all the process due.  Although plaintiff asserts that defendant Peterson refused to obtain video footage of the visiting room from the weekend before September 12, 2011, defendants point out that plaintiff admitted at his deposition that defendant Peterson called visiting during the October 11, 2011 disciplinary hearing, and confirmed that plaintiff did not have a visitation that weekend.  (ECF No. 41-1 at 11.)  As to defendant Swarthout, defendants contend that plaintiff conceded that defendant Swarthout was not present at the disciplinary hearings and plaintiff did not speak to defendant Swarthout about the cell incident or the disciplinary proceedings.  (ECF No. 41-1 at 11.)  Moreover, defendants contend that during his deposition plaintiff changed the theory of

liability to defendant's role in the administrative appeal process, but that such new theory fails to state a cognizable due process claim.  (ECF No. 41-1 at 12.)

Finally, defendants Slupski, Peterson, and Swarthout argue that they are entitled to qualified immunity because defendants did not violate plaintiff's rights, but that in any event, reasonable prison officials in their positions would have believed their actions were lawful.  (ECF No. 41-1 at 13-14.)

Plaintiff contends that his excessive force claim against defendant Rosario is not barred under Heck v. Humphrey, 512 U.S. 477, 487 (1994), because the incident did not result in a criminal conviction, and his underlying criminal convictions were unrelated and occurred many years earlier.  As to the disciplinary hearing, plaintiff contends that the fact that the hearing officer confirmed that plaintiff was not in visiting the weekend before the cell search, demonstrates that the rules violation report contained a false statement:  the sworn officer report stating that the September 12, 2011 search of plaintiff's cell was related to defendant Rosario's alleged observation of suspicious activity by plaintiff while in visiting the preceding weekend. (ECF No. 46 at 10.)  If plaintiff was not in visiting, as the hearing officer confirmed, plaintiff argues the hearing officer was put on notice that the sworn officer report against plaintiff was perjured.  Plaintiff argues that the hearing officer was obligated to inquire into the false report, and his failure to do so demonstrates that he was biased against plaintiff and the officer's decision was arbitrary, in violation of plaintiff's due process rights.  Finally, plaintiff contends defendants are not entitled to qualified immunity.

In reply, defendants argue that notwithstanding plaintiff's misapprehension of the application thereof, plaintiff's excessive force claim against defendant Rosario is barred by the favorable termination rule under Balisok, 520 U.S. at 648, because success on the claim will necessarily invalidate plaintiff's guilty finding in the prison disciplinary proceedings.  (ECF No. 47 at 2.)  Defendants point out that plaintiff failed to dispute that defendant Swarthout did not participate in the disciplinary proceedings, and argue that plaintiff's disagreement with defendant Swarthout's sworn statement is not evidence, and is insufficient to raise a factual dispute in connection with plaintiff's due process claim against Swarthout.

3

1   Defendants contend that plaintiff's claim that defendant Peterson's confirmation that

2   plaintiff was not in the visiting room was sufficient to require Peterson to investigate the veracity

3   of defendant Rosario's report is unavailing for several reasons.  First, defendant Rosario's report

4   did not state that he saw plaintiff in the visiting room the weekend before the incident.  Second,

5   defendant Peterson explained that the reason for the search was not relevant to plaintiff's

6   obligation to comply with a direct order.  Third, plaintiff cited no evidence to show that defendant

7   Peterson knew that any part of defendant Rosario's report was false.  Finally, defendants argue

8   that plaintiff's reliance on Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997), is misplaced because

9   Hines arose in the context of a retaliation claim, not a due process context where, as here, the

10  deferential "some evidence" standard applies.  (ECF No. 47 at 3.)  Defendants contend that the

11  undisputed evidence shows that defendant Peterson had ample evidence from which to find

12  plaintiff guilty.

13  On January 13, 2015, plaintiff was granted leave to submit a declaration on the merits of

14  his opposition to the motion for summary judgment.  (ECF No. 48.)  On February 10, 2015, he

15  was granted an extension of time, but on March 12, 2015, plaintiff filed a notice that he declined

16  to submit a declaration and would rely on the previously-submitted documents.  (ECF No. 52.)

17  A.  Legal Standard for Summary Judgment

18  Summary judgment is appropriate when it is demonstrated that the standard set forth in

19  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

20  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

21  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

22  Under summary judgment practice, the moving party always
    bears the initial responsibility of informing the district court of the
23  basis for its motion, and identifying those portions of "the
    pleadings, depositions, answers to interrogatories, and admissions
24  on file, together with the affidavits, if any," which it believes
    demonstrate the absence of a genuine issue of material fact.
25

26  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

27  56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

28  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

4

1   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

2   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

3   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

4   burden of production may rely on a showing that a party who does have the trial burden cannot

5   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

6   should be entered, after adequate time for discovery and upon motion, against a party who fails to

7   make a showing sufficient to establish the existence of an element essential to that party's case,

8   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

9   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

10  necessarily renders all other facts immaterial."  Id. at 323.

11          Consequently, if the moving party meets its initial responsibility, the burden then shifts to

12  the opposing party to establish that a genuine issue as to any material fact actually exists.  See

13  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

14  establish the existence of such a factual dispute, the opposing party may not rely upon the

15  allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

16  form of affidavits, and/or admissible discovery material in support of its contention that such a

17  dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

18  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

19  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

20  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

21  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

22  a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

23  (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

24  1564, 1575 (9th Cir. 1990).

25          In the endeavor to establish the existence of a factual dispute, the opposing party need not

26  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

27  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

28  trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

5

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on July 3, 2014 (ECF No. 42), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B. Facts[1]

1. At all relevant times, plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and housed at CSP-SOL in Facility 1, Building 2, cell 132.  Inmate Watts was plaintiff's cellmate.

////

_____

[1]  For purposes of the instant motion for summary judgment, the court finds the following facts undisputed, unless otherwise indicated.  Documents submitted as exhibits are considered to the extent they are relevant, and despite the fact that they are not authenticated because such documents could be admissible at trial if authenticated.

2.  Defendant Rosario was a Yard and Visiting Officer, and Defendant Slupski was a Sergeant on the yard at CSP-SOL.

3.  At approximately 9:38 a.m., Rosario and Slupski approached plaintiff's cell to conduct a search.

4.  Defendant Slupski authorized a search of plaintiff's cell, based on information and belief that plaintiff was in possession of contraband.[2]

5.  Before September 12, 2011, plaintiff was aware that prison regulations authorized custody staff to conduct random searches without prior notice and that inmates are required to cooperate with staff.  (ECF No. 41-4 at 55; Pl.'s Depo. at 32.)

6.  As defendants approached cell 132, defendant Slupski was walking a few feet behind defendant Rosario.  (ECF No. 41-3 at 1-2.)

7.  When the cell door opened, defendant Slupski heard defendant Rosario give plaintiff an order for him to show defendant Rosario his hands.  (ECF No. 41-3 at 2.)

8.  Defendant Slupski saw defendant Rosario shoot pepper spray into the cell.  Because defendant Rosario was standing at the doorway, defendant Slupski's view was obstructed, and he did not see where the pepper spray landed.  (ECF No. 41-3 at 2; Pl.'s Depo. at 44.)

9.  When defendant Slupski arrived at the door, defendant Rosario was still in the doorway, the toilet was flushing, and plaintiff appeared to have pepper spray on him.  (ECF No. 41-3 at 2.)  Defendant Slupski saw plaintiff hunched over the toilet (id.), but plaintiff claims he was never at the toilet.

10.  Defendant Slupski states that plaintiff backed away from the toilet and sat down on the lower bunk (ECF No. 41-3 at 2), but plaintiff maintains he was never at the toilet.

////

---

[2]  Defendant Slupski declares that he ordered an unannounced, random search of plaintiff's cell as permitted under California Code of Regulations, Title 15, § 3287(c).  Plaintiff contends that the search was a "special" search which is conducted when the inmate is "suspected of having items of contraband," (ECF No. 46-1 at 2), citing California Code of Regulations, Title 15, § 3287(a)(3) ("An inmate's presence is not required during routine inspections of living quarters and property when the inmate is not or would not otherwise be present.  During special inspections or searches initiated because the inmate is suspected of having a specific item or items of contraband in his or her quarters or property, the inmate should be permitted to observe the search when it is reasonably possible and safe to do so.")

1    11.   Defendant Slupski announced a code over the institutional radio, and defendant

2    Rosario ordered inmate Watts to crawl backwards out of the cell.  Inmate Watts complied, and he

3    was escorted out of the area by responding staff.  (ECF No. 41-3 at 2; Pl.'s Depo. at 45.)

4    12.   Defendant Rosario then instructed plaintiff to slide on his stomach backwards out of

5    the cell, and plaintiff complied.  (ECF Nos. 41-3 at 2; Pl.'s Depo. at 46.)

6    13.   Defendant Slupski declares that when plaintiff exited the cell, and was on the

7    dayroom floor, defendant Slupski ordered plaintiff to put his hands behind his back and cross his

8    legs.  (ECF No. 41-3 at 2.)  Defendant declares that plaintiff complied, and defendant Rosario

9    handcuffed plaintiff without incident, and responding staff escorted plaintiff out of the building.

10   (ECF No. 41-3 at 2.)

11   Plaintiff declares that he crawled out of the cell, and once his feet were out, defendant

12   Rosario grabbed plaintiff and stood him up, during which plaintiff was shaking his head, trying to

13   keep the pepper spray out of his eyes, and got pepper spray on Rosario.  (Pl.'s Depo at 47-48.)

14   Plaintiff declares that defendant Rosario then "got mad and slung [plaintiff] to the ground."  (Pl.'s

15   Depo at 49.)  Plaintiff states he was slung to the ground by his arm and shoulder, his feet went out

16   from under him, and he landed on his left shoulder.  (Pl.'s Depo. at 51.)  Plaintiff was then

17   handcuffed.  (Pl.'s Depo. at 53.)

18   14.   The entire incident inside the cell lasted only a matter of seconds.  (ECF No. 41-3 at

19   2.)

20   15.   Defendant Slupski did not see defendant Rosario use any physical force on plaintiff.

21   Defendant Rosario shot a single burst of pepper spray into the cell.  Although defendant Slupski

22   does not recall how long the burst lasted, it was a short burst because he was only a few feet

23   behind defendant Rosario, and it took defendant Slupski no more than a couple of seconds to

24   reach the doorway of cell 132.  (ECF No. 41-3 at 2.)

25   Plaintiff contends that defendant Rosario emptied the can of pepper spray into plaintiff's

26   face.  (Pl.'s Depo. at 41; ECF No. 1 at 7.)

27   16.   Defendant Slupski did not see Rosario punch, kick, strike, or hit plaintiff.  He did not

28   see Rosario throw or slam plaintiff to the floor inside or outside of cell 132.  (ECF No. 41-3 at 2.)

1    17.  At no time that plaintiff was in defendant Slupski's presence did plaintiff inform

2    defendant Slupski that defendant Rosario pepper sprayed plaintiff without justification or that

3    defendant Rosario used excessive or unreasonable force.  (ECF No. 41-3 at 3.)  Plaintiff did not

4    tell defendant Slupski that plaintiff was injured or required medical attention.  (Id.)

5    18.  Before September 12, 2011, defendant Slupski had no knowledge that defendant

6    Rosario purportedly used excessive or unreasonable force on inmates, and he was unaware of any

7    complaint against defendant Rosario for excessive or unreasonable physical force before

8    September 12, 2011.[3]  (ECF No. 41-3 at 3.)

9    19.  Plaintiff contends that defendant Slupski is responsible for defendant Rosario's

10   conduct because defendant Slupski is Rosario's "boss," he "let Rosario do whatever," and he

11   failed to find out "what type of search" they were conducting -- a special or random search.  (Pl.'s

12   Depo. at 63-66.)

13   20.  On September 13, 2011, defendant Rosario issued Rules Violation Report Log No.

14   S1-11-09-0597 against plaintiff, charging him with "resisting/obstructing a peace officer resulting

15   in the use of force" as a result of events that occurred in plaintiff's cell the day before.  (ECF No.

16   41-4 at 18-25; 56.)

17   21.  In the disciplinary report, defendant Rosario provided the following account of what

18   transpired during the search:  On September 12, 2011, Rosario and Slupski conducted a search of

19   cell 132.  As Rosario opened the cell door, he noticed that Haynes had a shiny, unknown object in

20   his right hand.  Rosario ordered Haynes to show him his (Haynes') hands, but Haynes refused and

21   made an aggressive move toward the cell door with the unknown object in his hand.  Rosario then

22   pepper sprayed Haynes in the facial area.  Haynes flushed the object down the toilet before sitting

23   down toward the back of the cell.  Rosario instructed Haynes to lie down and slide out of his cell,

24   _____

25   [3]  Plaintiff disputes this fact based on his declaration concerning John C. Draper's lawsuit against
     defendant Rosario claiming that Rosario used excessive force against Draper.  (ECF No. 46-1 at
26   6, citing ECF No. 46 at 16.)  Plaintiff claimed he would need discovery to determine whether
     defendant Slupski, who is Rosario's supervisor, was aware of the Draper complaint.  (ECF No. 46
27   at 16.)  However, as discussed in the January 13, 2015 order, only Rosario was named as a
     defendant in the Draper case, and a jury found that Rosario did not use excessive force on inmate
28   Draper.  (ECF No. 48 at 3.)

9

which Haynes did.  Rosario handcuffed Haynes, and Haynes was subsequently escorted out of the building.[4]  (ECF No. 41-4 at 18; <u>see generally</u> ECF No. 41-4 at 4-16.)

22.  Plaintiff was given a copy of the disciplinary report on September 15, 2011.  (ECF No. 41-4 at 18, 22.)

23.  Defendant Lieutenant Peterson was the Senior Hearing Officer at CSP-SOL assigned to preside over the disciplinary proceedings.  (ECF No. 41-4 at 22; 56; Pl.'s Depo. at 68.)

24.  On September 20, 2011, plaintiff appeared before defendant Peterson for the hearing. After thirty minutes, defendant Peterson postponed the hearing due to defendant Slupski's unavailability.  (ECF No. 41-4 at 22; Pl.'s Depo. at 74-75.)

25.  On September 26, 2011, an Investigative Employee was assigned to assist plaintiff in preparing for the disciplinary proceeding.  The Investigative Employee gathered all the information plaintiff requested.  (ECF No. 41-4 at 23-24; Pl.'s Depo. at 73-74.)

26.  Defendant Peterson reconvened the hearing on October 11, 2011.  Based on plaintiff's request, defendants Rosario and Slupski and inmate Watts were present and questioned at the hearing.  (ECF Nos. 41-2 at 4, 46-1 at 8-9, citing ECF No. 41-4 at 18, 22, 24.).  Defendant Peterson did not allow plaintiff to call inmate Thompson because he did not directly observe the incident due to being in another cell -- four doors down from plaintiff's cell.  (ECF No. 41-4 at 22-23.)

27.  Although plaintiff alleged that defendant Peterson refused to consider or allow the introduction of the video of the visiting room from the weekend before September 12, 2011 (to show that the reason for the cell search was a pretext), plaintiff admitted that defendant Peterson

////

---

[4]  Plaintiff disputes this fact in part because it "omits critical information in Rosario's disciplinary report; that is, it states cell search was 'related to Officer Rosario's observation of suspicious activity by Haynes while in Visiting the preceding weekend.'"  (ECF No. 46-1 at 7, quoting ECF No. 41-4 at 5.)  In Incident Report No. SOL-SF1-11-09-0308, Correctional Lt. Moss noted that on September 12, 2011, defendants Rosario and Slupski reported to plaintiff's cell "to conduct a cell search related to Officer Rosario's observation of suspicious activity by [plaintiff] while in Visiting the preceding weekend."  (ECF No. 41-4 at 5.)  But defendant Rosario's statement in the report did not mention the reference to suspicious activity in visiting.  (ECF No. 41-4 at 18.)

1  called Visiting during the disciplinary hearing and confirmed that plaintiff did not have a

2  visitation the weekend before the cell search.  (ECF Nos. 1 at 10; Pl.'s Depo. at 79-81.)

3       28.  Plaintiff also contends that defendant Peterson did not allow him to call other

4  witnesses or present additional evidence at the disciplinary hearing.  But plaintiff failed to

5  identify what additional witnesses he wished to call and what relevant information they had.  He

6  also failed to specify what additional "evidence" he wanted to submit and how it was relevant to

7  the charge.  (Pl.'s Depo. at 74, 76-79.)

8       29.  At the hearing, inmate Watts stated that he was at the door when it opened and that

9  plaintiff was on the floor when defendant Rosario pepper sprayed him.  Plaintiff denied making

10  an aggressive move towards defendant Rosario, denied being at the toilet, and claimed he was

11  behind inmate Watts when defendant Rosario sprayed him.  (ECF No. 41-4 at 24.)

12       30.  Defendant Peterson found plaintiff guilty of Rules Violation Report Log No. S1-11-

13  09-0597, resulting in the forfeiture of ninety days credit.  (ECF No. 41-4 at 25.)  The finding of

14  guilty has not been reserved or vacated, and the forfeiture of time credit has not been restored.

15  (ECF No. 41-4 at 57.)

16       31.  Defendant Peterson found that the preponderance of the evidence presented at the

17  hearing established that:  Plaintiff refused to comply with defendant Rosario's direct order;

18  plaintiff made an aggressive move towards defendant Rosario while still holding an unknown

19  object in plaintiff's hand; and defendant Rosario was required to use force to compel plaintiff's

20  compliance.  Defendant Peterson concluded that plaintiff's account of what transpired was not

21  credible because, if inmate Watts was near the door and standing in front of plaintiff, inmate

22  Watts would have been pepper sprayed or suffered the effects of the pepper spray.  But Watts was

23  not sprayed.  Defendant Peterson also found that defendant Slupski's account was consistent with

24  defendant Rosario's.  Defendant Peterson determined that the reason or basis for searching

25  plaintiff's cell was not relevant to plaintiff's failure to comply with defendant Rosario's direct

26  order.  (ECF No. 41-4 at 25; 39; Pl.'s Depo. at 57.)

27       32.  On October 23, 2011, plaintiff was given a copy of defendant Peterson's findings and

28  disposition.  (ECF No. 41-4 at 25.)

1      33.   At all times relevant here, defendant Swarthout was Warden of CSP-SOL.

2 Defendant Swarthout was not present at or involved in the disciplinary proceedings.  Plaintiff did

3 not speak to defendant Swarthout about the incident with defendant Rosario or about the

4 disciplinary proceedings.  (ECF No. 41-4 at 56; Pl.'s Depo. at 84-86.)

5      34.   Plaintiff filed an inmate grievance, Log No. CSP-S-12-0041, alleging that defendant

6 Rosario used excessive force by pepper spraying him on September 12, 2011.  (ECF No. 41-4 at

7 27-28.)

8      35.   Plaintiff contends that his due process claim against defendant Swarthout arises from

9 the improper screening and processing of his inmate grievance concerning the September 12,

10 2011 incident and disciplinary proceedings.  (Pl.'s Depo. at 86-87.)

11      36.   In his verified response to interrogatory no. 7, defendant Swarthout declares that he

12 did not review or respond to plaintiff's appeal Log No. CSP-S-12-0041.  (ECF No. 41-4 at 48.)

13 Rather, based on his customary practice, defendant Swarthout states that appeals alleging staff

14 misconduct are assigned to the Chief Deputy Warden ("CDW") or an Associate Warden ("AW")

15 for investigation and response.  (Id.)  If the CDW or AW determines that defendant Swarthout

16 needs to be informed of a particular appeal or alleged misconduct, the appeal is then brought to

17 Swarthout's attention.  (Id.)  With regard to appeal Log No. CSP-S-12-0041, Lt. D. Brida

18 investigated the appeal, and the second level appeal was addressed and signed by Acting CDW E.

19 Arnold.  (ECF No. 41-4 at 28, 48.)[5]

20 _____

21 [5]  Plaintiff disputes this fact, claiming that because defendant Swarthout's printed name and a
   signature are affixed to the second level appeal, plaintiff has demonstrated that Swarthout

22 authored the second-level response because no forgery has been proven.  (ECF No. 46-1 at 12.)
   However, plaintiff submits no evidence to rebut Swarthout's verified response that it was

23 common practice for the CDW to review appeals, and that CDW E. Arnold reviewed and signed
   the second level appeal.  (ECF No. 41-4 at 48.)  Thus, CDW E. Arnold was authorized by

24 Swarthout to review and sign plaintiff's second level appeal, and there is no "forgery" to be
   proven.  In addition, in the second level review box for staff use only, the appeal was accepted at

25 the second level of review, and clearly states it was assigned to acting CDW E. Arnold for second
   level review.  (ECF No. 41-4 at 28.)  The signature by E. Arnold in the review box matches the

26 signature above Swarthout's typewritten name at the bottom of the second level appeal response.
   (Compare ECF No. 41-4 at 28 with ECF No. 46-1 at 33.)  Moreover, Swarthout's signature is

27 affixed to his verification, and his signature differs entirely from the signature on the second level
   appeal response.  (Compare ECF No. 41-4 at 50 to ECF No. 46-1 at 33.)

28

1    C. Discussion

2        1. Alleged Excessive Force

3        The Supreme Court has held that where a judgment in the prisoner's favor in his section

4    1983 action would necessarily imply the invalidity of a deprivation of good-time credits, the

5    plaintiff must first demonstrate that the credits deprivation has been invalidated in order to state a

6    cognizable claim under section 1983. Edwards v. Balisok, 520 U.S. 641, 644 (1997); Heck v.

7    Humphrey, 512 U.S. 477, 483, 486-87 (1994) (setting forth this "favorable termination" rule).

8    The U.S. Court of Appeals for the Ninth Circuit has clarified that application of Heck's favorable

9    termination rule "turns solely on whether a successful § 1983 action would necessarily render

10   invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's

11   confinement." Ramirez v. Galaza, 334 F.3d 850, 856 (9th Cir. 2003). The Heck bar exists to

12   preserve the rule that challenges which, if successful, would necessarily imply the invalidity of

13   incarceration or its duration, be brought via petition for writ of habeas corpus. Muhammad v.

14   Close, 540 U.S. 749, 751-52 & n.1 (2004).

15       Defendants submit evidence showing that as a result of the September 12, 2011 incident,

16   plaintiff was found guilty in a Rules Violation Report of resisting/obstructing a peace officer

17   resulting in use of force, in violation of Title 15, § 3005(d)(1) of the California Code of

18   Regulations, and was assessed a ninety-day loss of behavioral credits. (ECF No. 41-4 at 18.) It is

19   undisputed that plaintiff has not successfully challenged this disciplinary action through a habeas

20   petition. (ECF No. 46-1 at 10.) Defendants conclude that plaintiff's excessive force claim is

21   therefore barred by Heck and Edwards. Defendants are mistaken.

22       A conviction for resisting or obstructing a peace officer under California law does not

23   necessarily preclude an excessive use of force claim pursuant § 1983. See Hooper v. County of

24   San Diego, 629 F.3d 1127 (9th Cir. 2011) (Fourth Amendment excessive force claim not Heck-

25   barred because "[a] holding in Hooper's § 1983 case that the use of the dog was excessive force

26   would not "negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of

27   [Hooper's] attempt to resist it [when she jerked her hand away from Deputy Terrell]."); Smith v.

28   City of Hemet, 394 F.3d 689, 699 (9th Cir. 2005) ("[A] § 1983 action is not barred under Heck

1      unless it is clear from the record that its successful prosecution would necessarily imply or

2      demonstrate that the plaintiff's earlier conviction was invalid.").  California district courts have

3      determined that Eighth Amendment claims under circumstances similar to those presented here

4      are not <u>Heck</u>-barred.  <u>See</u> <u>Green v. Goldy</u>, 2011 WL 2445872 (E.D. Cal. 2011) (prisoner's

5      excessive force claim not <u>Heck</u>-barred because two factual predicates exist, one giving rise to the

6      disciplinary conviction, and the other giving rise to a potential civil claim for excessive force); <u>El</u>

7      <u>-Shaddai v. Wheeler</u>, 2011 WL 1332044, at *5 (E.D. Cal. Apr. 5, 2011) (finding that an Eighth

8      Amendment excessive use of force claim is not <u>Heck</u>-barred because "a judgment for plaintiff on

9      his Eighth Amendment claim would not necessarily imply the invalidity of his disciplinary

10      conviction" for willfully resisting a peace officer).

11          Plaintiff's suit, if successful, would not necessarily imply the invalidity of the Rules

12      Violation determination.  Plaintiff alleges an excessive force claim asserting that more force than

13      was appropriate was applied by defendant Rosario, regardless of whether plaintiff resisted

14      defendant Rosario.  When force is needed, only force that does not violate the Eighth Amendment

15      may be applied, and review of any such claim of excessive force would not necessitate reversal of

16      the Rules Violation decision.  Thus, even assuming that plaintiff resisted or obstructed defendant,

17      plaintiff declares that defendant Rosario sprayed pepper spray in plaintiff's face without warning

18      while ordering him to put his hands up and get down, until the pepper spray canister was empty,

19      and then violently slung him to the ground before he could comply with defendant's order.  Under

20      the evidence presented in connection with the summary judgment motion, a reasonable factfinder

21      could conclude both that plaintiff's conduct on September 12, 2011 violated § 3005(d)(1), and

22      that defendant Rosario used excessive force in response to plaintiff's conduct.  Such findings

23      would not necessarily imply the invalidity of plaintiff's disciplinary conviction.  <u>See</u> <u>Hooper</u>, 629

24      F.3d at 1132 ("Though occurring in <u>one continuous chain of events</u>, two isolated factual contexts

25      would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the

26      second giving rise to civil liability on the part of the arresting officer.") (quoting <u>Yount v. City of</u>

27      <u>Sacramento</u>, 43 Cal.4th 885, 899 (2008)).

28      ////

1    Therefore, plaintiff's claim that defendant Rosario allegedly used excessive force is not

2    barred by <u>Heck</u>, and defendants' motion for summary judgment is denied.

3              2.  <u>Alleged Failure to Protect</u>

4    Plaintiff alleges that defendant Slupski was deliberately indifferent to plaintiff's safety,

5    and failed to protect plaintiff, by failing to ensure that the reason for the September 12, 2011 cell

6    search was valid, and for failing to review the visiting room videotape before allowing such cell

7    search.  Defendants contend that plaintiff failed to demonstrate defendant Slupski was aware that

8    defendant Rosario intended to use force, or used excessive force, or that Slupski failed to

9    intervene once the alleged unlawful force was used.  Defendants argue that because plaintiff's

10   claims against defendant Slupski are based solely on a theory of respondeat superior, and there is

11   no evidence showing that defendant Slupski participated in the use of force, knew of defendant

12   Rosario's alleged use of excessive force and failed to prevent it, and there is no policy at issue,

13   defendant Slupski is entitled to summary judgment.

14              a.  <u>Legal Standards</u>

15   The Civil Rights Act under which this action was filed provides as follows:

16              Every person who, under color of [state law] . . . subjects, or causes
                to be subjected, any citizen of the United States . . . to the
17              deprivation of any rights, privileges, or immunities secured by the
                Constitution . . . shall be liable to the party injured in an action at
18              law, suit in equity, or other proper proceeding for redress.

19   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

20   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See</u>

21   <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978) ("Congress did not intend § 1983

22   liability to attach where . . . causation [is] absent."); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976) (no

23   affirmative link between the incidents of police misconduct and the adoption of any plan or policy

24   demonstrating their authorization or approval of such misconduct).

25   Although supervisory government officials may not be held liable for the unconstitutional

26   conduct of their subordinates under a theory of respondeat superior, <u>Ashcroft v. Iqbal</u>, 556 U.S.

27   662, 676 (2009), they may be individually liable under Section 1983 if there exists "either (1) [the

28   supervisor's] personal involvement in the constitutional deprivation; or (2) a sufficient causal

1  connection between the supervisor's wrongful conduct and the constitutional violation." <u>Hansen</u>

2  <u>v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989)

3  ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor

4  participated in or directed the violations, or knew of the violations and failed to act to prevent

5  them."); <u>Starr v. Baca</u>, 652 F.3d 1202, 1221 (9th Cir. 2011) ("[W]here the applicable

6  constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory

7  liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct

8  by others.").

9         The Eighth Amendment protects prisoners from inhumane methods of punishment and

10  from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir.

11  2006). Although prison conditions may be restrictive and harsh, prison officials must provide

12  prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. <u>Farmer v.</u>

13  <u>Brennan</u>, 511 U.S. 825, 832-33 (1994) (quotations omitted). A prison official may be held liable

14  under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious

15  harm and disregards that risk by failing to take reasonable measures to abate it." <u>Farmer</u>, 511

16  U.S. at 847. "[T]he official must be both aware of facts from which the inference could be drawn

17  that a substantial risk of serious harm exists, and he must also draw the inference. <u>Id.</u> at 837.

18                                        b. <u>Discussion</u>

19         Here, plaintiff adduced no evidence demonstrating that defendant Slupski was aware that

20  defendant Rosario was going to use force, or was personally involved in the use of force against

21  plaintiff. It is undisputed that defendant Slupski was behind defendant Rosario and that Slupski's

22  view was obstructed by defendant Rosario's presence in the doorway. In his deposition, plaintiff

23  conceded that he did not see defendant Slupski in the doorway until after defendant Rosario

24  started pepper spraying, and "could see the sergeant barely coming behind" defendant Rosario.

25  (ECF No. 41-1 at 8-9, quoting Pl.'s Depo. at 44.) Plaintiff does not allege that defendant Slupski

26  witnessed defendant Rosario "fling" plaintiff to the ground or failed to intervene in Rosario's use

27  of force.

28  ////

1    Thus, plaintiff adduced no evidence demonstrating that defendant Slupski was aware that

2    defendant Rosario might use force, or that defendant Slupski was in a position to intervene yet

3    failed to do so.  Rather, as defendants contend, plaintiff's sole allegations as to defendant Slupski

4    are based on a generalized theory of respondeat superior.  Indeed, in his verified complaint,

5    plaintiff claimed that defendant Slupski was deliberately indifferent "by his mismanagement of

6    [defendant] Rosario," and that as a result of such "mismanagement," plaintiff suffered the

7    infliction of pepper spray by defendant Rosario.  (ECF No. 1 at 14.)[6]  In his unverified opposition

8    to the motion, plaintiff claimed that defendant Slupski is defendant Rosario's supervisor and is

9    responsible for Rosario's conduct.  (ECF No. 46 at 12.)  Such conclusory allegations are based

10   solely on defendant Slupski's supervisory role and, without more, do not rise to the level of a civil

11   rights violation.

12   Plaintiff failed to adduce evidence that defendant Slupski knew plaintiff faced a

13   substantial risk of serious harm yet disregarded such risk by failing to take reasonable measures to

14   stop it.

15   For all of the above reasons, defendant Slupski is entitled to summary judgment on

16   plaintiff's Eighth Amendment claim.

17                              3.  Alleged Due Process Violations

18                                  a.  Defendant Peterson

19   In his verified complaint, plaintiff alleged that defendants Peterson violated plaintiff's due

20   process rights because Peterson was allegedly biased in his decision-making, and refused to

21   consider the visiting videotape from the weekend prior to September 12, 2011.

22   ////

23

---

24   [6]  In his complaint, plaintiff also contended that defendant Slupski was required to ensure that the
     reason for the cell search was valid, by reviewing the videotape of the visiting area from the prior
25   weekend prior to the cell search.  (ECF No. 1. at 14.)  However, plaintiff adduced no evidence
     demonstrating that defendant Slupski was aware of the alleged tip that defendant Rosario
26   observed plaintiff's suspicious activity while plaintiff was in visiting.  Defendant Slupski declares
     that he ordered the cell search based on defendant Rosario's statement that Rosario "had
27   information that led him to believe that [plaintiff] was in possession of contraband."  (ECF No.
     41-3 at 1.)  Plaintiff submitted no evidence to rebut defendant Slupski's declaration.
28

                                              17

1    In the context of a disciplinary proceeding, due process requires that "some evidence"

2  support the disciplinary decision.  Superintendent v. Hill, 472 U.S. 445, 455 (1985).  However,

3  "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of

4  rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539,

5  556 (1974).  Rather, the following minimum procedural due process protections apply in prison

6  disciplinary proceedings:  (1) written notice of the charges; (2) at least 24 hours between the time

7  the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare

8  his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for

9  taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when

10  permitting him to do so would not be unduly hazardous to institutional safety or correctional

11  goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues

12  presented are legally complex.  Wolff, 418 U.S. at 556.  The disciplinary hearing must be

13  conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause."

14  Wolff, 418 U.S. at 571.

15    Here, it is undisputed that plaintiff received written notice of the charges in a timely

16  manner, was provided an investigative employee to assist plaintiff in preparing for the hearing,

17  and was provided a written statement of Peterson's findings and disposition.  It is undisputed that

18  plaintiff was allowed to call the following witnesses:  defendants Rosario and Slupski and inmate

19  Watts.[7]  Plaintiff's request to call inmate Thompson was properly denied because he was not a

20  percipient witness.  Plaintiff identified no other witness he sought to call and did not identify what

21  testimony such witness would offer.

22  ////

23  _____

24  [7]  The first hearing on September 20, 2011, was postponed due to the unavailability of defendant
Slupski.  (ECF No. 41-4 at 22.)  The parties agree that defendant Slupski was questioned at the
25  October 11, 2011 hearing (ECF Nos. 41-2 at 4, 46-1 at 8-9).  However, the rules violation report
states that defendant Slupski was again unavailable, but his testimony in the Investigative
26  Employee report was used with no objection from plaintiff.  (ECF No. 41-4 at 23.)  This is a
distinction without a difference because plaintiff was allowed to question defendant Slupski
27  through the investigative employee, and his statements were considered by defendant Peterson in
reaching his decision.

28

18

1        The only other potential evidence identified by plaintiff was a video of the visiting room

2   from the weekend before September 12, 2011, which he wanted submitted at the hearing to

3   demonstrate that the reason for the cell search was a pretext.  It is undisputed that defendant

4   Peterson did not allow admission of such video.  However, it is also undisputed that during the

5   disciplinary hearing, defendant Peterson called visiting and confirmed that plaintiff did not have a

6   visitation the weekend before the cell search.  Thus, plaintiff was not precluded from submitting

7   evidence to support his claim that he was not in visiting the weekend before; rather, plaintiff was

8   denied admission of the videotape.  The videotape would have been redundant of the verbal

9   confirmation that defendant Peterson received, and therefore the refusal to admit the video was

10  not prejudicial, and does not evidence bias on the part of defendant Peterson.

11       Plaintiff makes much of the unsubstantiated[8] reference to the alleged tip coming from

12  plaintiff in the visiting room the prior weekend.  However, in his verified interrogatory response,

13  defendant Peterson stated that he did not know and does not know whether Lt. Moss' statement is

14  false, but confirmed that Peterson "did not consider Moss's statement in finding plaintiff guilty."

15  (ECF No. 41-4 at 39.)  Rather, because plaintiff was charged with resisting/obstructing a peace

16  officer resulting in the use of force, Peterson's focus was on what happened in the cell, and

17  Peterson "found that the preponderance of the evidence showed that plaintiff refused to comply

18  with [defendant] Rosario's direct order."  (ECF No. 41-4 at 39.)  It is undisputed that Rosario

19  ordered plaintiff to show his hands.  Defendant Peterson found that the "reason for plaintiff's cell

20  search was irrelevant and of no consequence to plaintiff's failure to comply with a direct order."

21  (Id.)  Defendant Peterson's focus on what took place during the cell search was reasonable and

22  ////

23  

---

[8]  Plaintiff did not provide a declaration or discovery response from defendant Rosario confirming
24  that Rosario made such a statement, or a declaration from Lt. Moss confirming that defendant
    Rosario told Lt. Moss that he observed plaintiff's suspicious activity while plaintiff was in
25  visiting, or otherwise identifying the source of the information contained in Lt. Moss' written
    statement.  Indeed, in his deposition, plaintiff confirmed that he did not speak with Lt. Moss as to
26  who provided this information to Lt. Moss.  (Pl.'s Depo. at 83.)  At the subsequent disciplinary
    hearing, inmate Watts stated that when he was in the holding cell, he overheard defendant Rosario
27  say that he "searched the cell due to his observations in visiting."  (ECF No. 41-4 at 24.)  But
    plaintiff did not provide a declaration by inmate Watts.
28

1    does not demonstrate bias on the part of defendant Peterson.  Plaintiff submitted no evidence

2    demonstrating that defendant Peterson knew Lt. Moss' statement was false.

3         Moreover, as argued by defendants, plaintiff's reliance on <u>Hines v. Gomez</u>, 108 F.3d 255,

4    268 (9th Cir. 1997), is unavailing because the context in <u>Hines</u> was a retaliation claim.  The Ninth

5    Circuit held that the "some evidence" standard does not apply where an inmate alleges that the

6    prison official's accusation that the inmate violated a disciplinary rule is false and retaliatory.  <u>Id.</u>

7    at 268.  Here, plaintiff does not allege a retaliation claim, but contends that defendant Peterson

8    violated plaintiff's due process rights in connection with a prison disciplinary hearing.

9         As set forth above, the Supreme Court requires this court to apply the more deferential

10   "some evidence" standard to plaintiff's due process claim.  <u>Hill</u>, 472 U.S. at 455.  In <u>Hill</u>, the

11   Supreme Court stated,

12
13
14

> [a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

15   <u>Id.</u> at 455-56 (citations omitted) (emphasis added).  The Court declined to adopt a more stringent

16   standard, reasoning, "[p]rison disciplinary proceedings take place in a highly charged atmosphere,

17   and prison administrators must often act swiftly on the basis of evidence that might be insufficient

18   in less exigent circumstances."  <u>Id.</u> at 456 (citation omitted).  The Court recognized that "[t]he

19   fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside

20   decisions of prison administrators that have some basis in fact."  <u>Id.</u>  The Court found that the

21   evidence in <u>Hill</u> met the "some evidence" standard, noting that the disciplinary panel had received

22   testimony from a prison guard and copies of a written report.  <u>Id.</u> at 456.  In coming to this

23   conclusion, the Court explained:

24
25
26

> The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing.

27   <u>Hill</u>, 472 U.S. at 457.

28   ////

1    Here, at the prison disciplinary hearing, plaintiff was allowed to question defendant

2    Rosario and inmate Watts.  (ECF No. 41-4 at 23-24.)  Defendant Slupski was interviewed prior to

3    the hearing (ECF No. 41-4 at 20) or questioned at the October 11, 2011 hearing (ECF Nos. 41-2

4    at 4, 46-1 at 8-9).  (See n.6 *supra*.)  Defendant Peterson considered the testimony of all the

5    witnesses and the investigative employee's report.  (ECF No. 41-4 at 23.)  In reaching the guilty

6    finding, defendant Peterson credited defendant Rosario's testimony, and found inmate Watts

7    could not have been at the door or the one who flushed the toilet because inmate Watts was not

8    sprayed or affected by the pepper spray.  (ECF No. 41-4 at 25.)  Defendant Peterson also found

9    that defendant Slupski's observation of plaintiff hunched over the toilet with it flushing was

10   consistent with defendant Rosario's testimony.  (Id.)

11       Thus, plaintiff was provided an opportunity to present evidence on his behalf, and there

12   was some evidence to support the guilty finding.  In this context, the court is not required to

13   determine the reason for the cell search, or to evaluate what other conclusions might have been

14   reached.  Rather, the court is tasked with determining whether the conclusion made at the

15   disciplinary hearing is supported by "some evidence" in the record.  In Hill, the Supreme Court

16   held that the testimony and report of one prison guard, no matter how meager it may have been,

17   constituted some evidence.  Id. 472 U.S. at 456.  After hearing and reviewing all the evidence,

18   defendant Peterson relied on the testimony of defendant Rosario and the statements of defendant

19   Slupski to find plaintiff guilty.  Thus, the disciplinary determination rendered here was supported

20   by some evidence.[9]

21   ////

22   _____

9  To the extent plaintiff argues that the disciplinary charges were false, courts have held that
23   prisoners do not have a constitutionally guaranteed immunity from being falsely or wrongly
     accused of conduct which may result in the deprivation of a protected liberty interest.  See
24   Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951-
     52 (2d. Cir. 1986), cert. denied, 485 U.S. 982 (1988) (allegation that false evidence was planted
25   by a prison guard does not state a constitutional claim where procedural process protections are
     provided).  Rather, the Fourteenth Amendment provides that a prisoner has a right not to be
26   deprived of a protected liberty interest without due process of law.  Sprouse, 870 F.2d at 452.
     Thus, as long as a prisoner receives proper procedural due process, a claim based on the falsity of
27   disciplinary charges, standing alone, does not state a constitutional claim.  Id.; see also Freeman,
28   808 F.2d at 951.

1    In light of the above, defendant Peterson is entitled to summary judgment on plaintiff's

2   due process claim.

3                b.  Defendant Swarthout

4    In his verified complaint, plaintiff alleged that defendant Swarthout violated plaintiff's

5   due process rights because Swarthout was allegedly biased in his decision-making, and refused to

6   consider the visiting videotape from the weekend prior to September 12, 2011.

7    However, it is now undisputed that defendant Swarthout was not involved in the

8   disciplinary proceedings.  Thus, plaintiff's verified allegations in his complaint are without merit

9   as to defendant Swarthout because plaintiff failed to demonstrate a link or connection between

10   defendant Swarthout and the disciplinary proceedings.  42 U.S.C. § 1983 (the statute requires that

11   there be an actual connection or link between the actions of the defendants and the deprivation

12   alleged to have been suffered by plaintiff).

13    But in his deposition, plaintiff apparently changed his theory of liability and confirmed

14   that his due process claim against defendant Swarthout rests solely on Swarthout's alleged role in

15   the administrative appeal process:

16          [Swarthout] failed to properly screen the whole 602 process. . . .
          The Warden is the last person that [has] the say so on the 602
17          before going to Sacramento.  So everyone just denied, denied,
          denied the 602 process. . . .
18

19   (Pl.'s Depo. at 86.)  However, as set forth above, plaintiff failed to demonstrate that defendant

20   Swarthout was involved in reviewing plaintiff's second level appeal.  Rather, defendant

21   Swarthout adduced evidence that the second level appeal was assigned to CDW E. Arnold for

22   second level review, and it was E. Arnold who prepared and signed the second level appeal

23   response.  Plaintiff failed to rebut this evidence, and his subjective belief that Swarthout was

24   involved, solely based on Swarthout's typewritten name on the bottom of the second level appeal

25   review, is insufficient to rebut defendant's evidence to the contrary.  But even assuming,

26   *arguendo*, that defendant Swarthout prepared the second level appeal response, plaintiff cannot

27   state a due process claim based on such an allegation.

28   ////

1  Prisoners have no stand-alone due process rights related to the administrative grievance

2  process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez, 334 F.3d at

3  860 (holding that there is no liberty interest entitling inmates to a specific grievance process).  Put

4  another way, prison officials are not required under federal law to process inmate grievances in a

5  specific way or to respond to them in a favorable manner.  Because there is no right to any

6  particular grievance process, plaintiff cannot state a cognizable civil rights claim for a violation of

7  his due process rights based on an allegation that defendant Swarthout denied plaintiff's second

8  level appeal.  See,e.g., Wright v. Shannon, 2010 WL 445203 at *5 (E.D. Cal. Feb.2, 2010)

9  (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a

10  cognizable claim under the First Amendment); Walker v. Vazquez, 2009 WL 5088788 at *6-7

11  (E.D. Cal. Dec.17, 2009) (plaintiff's allegations that prison officials failed to timely process his

12  inmate appeals failed to a state cognizable under the Fourteenth Amendment); Towner v.

13  Knowles, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegations that prison

14  officials screened out his inmate appeals without any basis failed to indicate a deprivation of

15  federal rights); Williams v. Cate, 2009 WL 3789597 at *6 (E.D. Cal. Nov.10, 2009) ("Plaintiff

16  has no protected liberty interest in the vindication of his administrative claims.").  In other words,

17  the administrative appeals process does not create a protected liberty interest.  See Coleman v.

18  Adams, 2010 WL 2572534, at *7 (E.D. Cal. June 21, 2010) ("a plaintiff has no substantive right

19  to a prison grievance system").

20  For all of the above reasons, defendant Swarthout is entitled to summary judgment on

21  plaintiff's due process claim.

22  D.  Qualified Immunity

23  Because defendants Slupski, Peterson, and Swarthout are entitled to summary judgment,

24  the undersigned need not address their alternative arguments.

25  IV.  Conclusion

26  In accordance with the above, IT IS HEREBY ORDERED defendants' motion for

27  summary judgment (ECF No. 41) is granted in part and denied in part, as follows:

28  ////

1.  Defendants' motion for summary judgment as to plaintiff's excessive force claim against defendant Rosario is denied; and

2.  Defendants' motion for summary judgment is granted on all remaining claims.

Dated:  March 31, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/hayn3018.msj

24